UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DAWN L.,**[1]

    **Plaintiff,**

v.

**Case No. 3:20-cv-00359**
**Magistrate Judge Norah McCann King**

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applicationsof Plaintiff Dawn L. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 15, *Defendant's Memorandum in Opposition*, ECF No. 18, *Plaintiff's Reply*, ECF No. 19, and the *Certified Administrative Record*, ECF No. 11. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I. PROCEDURAL HISTORY

On February 16, 2017, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since November 25, 2014,[3] due to a number of physical and mental impairments. R. 260-66.[4] The application was denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 120-23. Administrative Law Judge ("ALJ") Deborah F. Sanders held a hearing on March 4, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34-67. In a decision dated May 17, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 16, 2017, the date on which the application was filed, through the date of that decision. R. 15-26. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 25, 2020. R. 1-5. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 20. The matter is ripe for disposition.

II. LEGAL STANDARD

A. Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

---

[3] Plaintiff later amended the alleged disability onset date to November 19, 2016. *See* R. 15, n. 1.
[4] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.     ALJ DECISION AND APPELLATE ISSUES**

The Plaintiff was 50 years old on February 16, 2017, the date on which her application was filed. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease; obesity; arthritis of bilateral acromioclavicular (AC) joints; history of bilateral rotator cuff tears and repairs; shoulder impingement syndrome, bilaterally; mild tendinopathy and bursitis of left upper extremity; bipolar disorder; major depressive disorder and post-traumatic stress disorder (PTSD). R. 17.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally push/pull with the bilateral upper extremities; frequently stop, crawl, climb ramps and stairs, but occasionally climb ladders, ropes or scaffolds; occasionally overhead reach with bilateral upper extremities; no overhead lifting; never work at unprotected heights or around dangerous machinery; able to perform routine tasks that do not require fast production rate pace, no strict production quotas; can occasionally interact with coworkers, but no tandem or shared tasks; can occasionally interact with supervisors; can occasionally interact with the public, but not in a customer service capacity; should not perform work requiring claimant to engage in conflict resolution or supervising or working as a team leader and can adapt to infrequent changes in the work setting.

R. 20-21. The ALJ also found that Plaintiff had no past relevant work. R. 25.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a warehouse checker, marker, and office mail clerk—existed in the national economy and could be performed by Plaintiff. R. 26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 16, 2017, the application date, through the date of the decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 15; *Plaintiff's Reply Brief,* ECF No. 19. Specifically, Plaintiff argues that the ALJ erred in failing to accord controlling weight to the opinion of Stephanie Ackner, M.D., Plaintiff's treating psychiatrist. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition*, ECF No. 18.

IV. **RELEVANT EVIDENCE**

Plaintiff testified at an administrative hearing on March 4, 2019. R. 34-67. She is involved in her church and leaves her home at least once per week. R. 41. She worked a number of part-time jobs in the past but has never worked full time. R. 45. Discussing her mental impairments, Plaintiff testified that "sometimes [she] get[s] depressed" and that she "[does not] want to do anything." R. 55. She suffers panic attacks both at home and in crowds two or three times per week. R. 45, 56. She has been treated by a therapist, every two to three weeks for the past two years and she sees Stephanie Ackner, M.D., every two to three months for medication

management. R. 51-52. Her medication helps "a little bit" but does not prevent the panic attacks. R. 56. In interacting with others, she remains "standoffish." *Id.* Problems with her arms are the main impediment to work: she cannot lift more than seven pounds and cannot lift her arms because of various surgeries to repair rotator cuff tears. R. 45. Moreover, she cannot stand more than thirty minutes at a time. R. 45.

### A. Plaintiff's Mental Impairments

Plaintiff has undergone individual therapy sessions and medication management at South Community Behavioral Health since 2016. R. 2300-2496. Treatment records include findings of euthymic or calm mood, R. 2361, 2366, 2381, 2391, 2399, 2409, 2417, and full affect, no impairment in cognition, R. 2311, 2409, 2481, and logical or linear thought process, R. 2361, 2366, 2409, 2418, 2481. Although treatment notes also include findings of anxiety, *e.g.*, R. 2364, 2369, 2376, 2388, 2399 ("Mood-euthymic, still anxious, but less so than previous visits"), 2407, at certain times, Plaintiff was not taking psychotropic medication, R. 2364, and at other times there were changes in her medication. *E.g.,* 2376, 2383, 2399. Notes from Plaintiff's October 11, 2017, visit included Plaintiff's report that she was "benefiting from the therapeutic progress. . . ." R. 2417. Her diagnoses at that time were "major depression recurrent-in partial remission" and "post traumatic stress disorder-improving" with medication and therapy. R. 2419. Stephanie Ackner, M.D., took over Plaintiff's treatment at South Community Behavioral Health in January 2018. That doctor's treatment notes indicated that Plaintiff reported that medications "are working 'pretty good' and [she] denies any concerns…." R. 2434. On mental status examination at that time, Dr. Ackner noted hypervigilance, but all other findings were within normal limits. R. 2435. In August 2018, Dr. Ackner noted that Plaintiff's mood and affect were "mildly dysphoric, constricted," and she exhibited hypervigilance, but all other findings on mental status

examination were normal. R. 2469. In November and December 2018, Dr. Ackner noted fluctuating symptoms of depression and anxiety secondary to stressors. R. 2485, 2494.

Haley K. O'Connell, Psy.D., consultatively examined Plaintiff at the request of the state agency in June 2017. R. 1003-1010. Plaintiff reported prior diagnoses of bipolar depression, posttraumatic stress disorder, and anxiety. R. 1005. She has obtained her Associate degree. *Id*. She was cooperative throughout the examination and Dr. O'Connell noted Plaintiff's "clear and logical" thought processes and apparent "good spirits." R. 1006. Plaintiff displayed no indication of anxiety. *Id*. She was alert and oriented; her judgment was sufficient and her insight was "at least marginally adequate." R. 1007. Dr. O'Connell diagnosed PTSD. *Id*. In assessing Plaintiff's ability to engage in work-related functions, Dr. O'Connell opined that Plaintiff "appears capable of performing multi-step tasks," "would be most successful if given independent tasks in a small group setting, including limited contact with customers," and "is easily overwhelmed, particularly in new situations or in crowds. . . ." R. 1008-09.

> The ALJ gave "partial" weight to Dr. O'Connell's opinion, reasoning:
>
> The undersigned considered the opinion of Haley K. O'Connell, Psy.D., a clinical psychologist who examined the claimant at the request of the Bureau of Disability Determination. Her opinion [] is the result of her own observations, psychometric testing, a clinical interview, and a mental status evaluation. Furthermore, as a consultant for the Social Security Administration, she has knowledge of Social Security Administration's program and requirements; however, limitations suggested by Dr. O'Connell at times appear to be based on subjective report without corroboration and she does no[t] identify vocationally relevant limitations for other parts. Therefore, the undersigned gives Dr. O'Connell's opinion partial weight.

R. 24 (citations to record omitted).

Karen Terry, Ph.D., reviewed the record in July 2017 on behalf of the state agency, R. 80-82, and opined that Plaintiff had no limitations in her understanding and memory and mild limitations in maintaining sustained concentration, persistence, and pace. R. 80. She "is able to

8

complete 1-5 step tasks in an environment that does not require fast pace, fast production, or high performance." *Id.* She is moderately limited in her ability to interact appropriately with the general public and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* "She can interact briefly and occasionally in situations that do not require more than superficial contact, resolving conflicts or persuading others to follow demands." R. 81. She is also moderately limited in her "ability to deal with work stressors and adaption. Clmt can do routine task w/ minimal changes. No strict production quotas." *Id*. In October 2017, Joseph Edwards, Ph.D., reviewed the record on reconsideration for the state agency, R. 97-99, and concurred with Dr. Terry's assessment, except that Dr. Edwards opined that Plaintiff is moderately—not mildly—limited in her ability to maintain attention, concentration, and pace. R. 98.

The ALJ accorded "significant, but not great weight" to the opinions of the state agency reviewing psychologists, explaining:

> The undersigned considered the opinion of the Bureau of Disability Determination psychological consultants expressed in the Mental Residual Functional Capacity set forth in Exhibit 1A (*affirmed at 3A*). Although neither examining nor treating mental health providers, these experts are licensed psychologists with knowledge of the Social Security Administration's program and requirements. Their opinion is generally consistent with the medical evidence of record; however, the undersigned set forth the limitations in more vocationally relevant terms. Therefore, the undersigned gives the Bureau of Disability Determination opinion significant, but not great weight.

R. 25.

In December 2018, Dr. Ackner completed a mental impairment questionnaire. R. 1031-33. Dr. Ackner diagnosed PTSD, bipolar II disorder, and opioid dependence in remission. *Id.* In a check-off portion of the form, Dr. Ackner noted that the signs and symptoms of Plaintiff's condition included poor memory, appetite, sleep, mood, and perceptual disturbances, substance

9

dependence, recurrent panic attacks, anhedonia, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, hypomania, obsessive or compulsions, and persistent irrational fears. *Id*. Dr. Ackner reported that findings at Plaintiff's December 2018 examination included a depressed mood and a dysphoric, constricted, and anxious affect. *Id.* According to Dr. Ackner, Plaintiff had had a fair to poor response to or benefit from medication and her prognosis was "fair [to] poor sue to psychosocial stressors." R. 1032. Plaintiff's impairments would cause Plaintiff to be absent from work more than three times per month, and to be distracted at work 2/3 of the time. R. 1032-33. Plaintiff could not perform full time competitive work over a sustained basis without missing work more than two time per month or being off task more than 15% of the work day due to her impairments or treatment. R. 1033.

> The ALJ assigned "partial" weight to Dr. Ackner's opinions:
>
> While Dr. Ackner is considered as the claimant's treating source, the statement provided is not entitled to controlling or deferential weight because it is not well-supported and is inconsistent with other substantial evidence in the record. There is no evidence that Dr. Ackner is familiar with the definition of "disability" under the Regulations given that there is no evidence of function-by-function limitations as required by SSR 96-8p. Moreover, her conclusory responses to the representative supplied form does not give the undersigned a full explanation of the objective evidence relied on in forming her opinion or an explanation detailed enough to allow the undersigned to make a determination as to whether a claimant is limited, to what extent, and/or disabled. Moreover, from Dr. Ackner's comments, the conclusory opinion appears to be based upon a moment in time, as the majority of the mental health treatment records do not show that level of disability. It is notable that there is not much evidence between the alleged onset dated and September 2016, when the claimant self-referred to South Community Inc., and a year later her depression was in partial remission, with PTSD improving on medications with no adverse side effects. Therefore, the undersigned gives Dr. Ackner's conclusions, insofar as they can be considered an opinion, only partial weight.

R. 24 (citations to record omitted).

### B. Plaintiff's Shoulder Impairments

The ALJ summarized the record relating to Plaintiff's shoulder impairments as follows:

> [T]he claimant has had a history of issues with her shoulders, including bilateral AC joint arthritis and impingement syndrome and history of bilateral rotator cuff tears and repairs, with mild tendinopathy and bursitis of left upper extremity. She underwent arthroscopic surgery to repair her right shoulder labral and rotator cuff tears in March 2015, as well as decompression and debridement. She did not follow-up with physical therapy, post-operatively. In September 2015, she underwent arthroscopic surgery to repair left shoulder labral and rotator cuff tears, as well as decompression and debridement. In May 2016, she required additional procedures on her right shoulder. Further, she required additional surgeries to her left shoulder in March 2017 and October 2018. It is notable here that the claimant was doing well after each surgery, when she completed treatment recommendations such as physical therapy, though she had reinjured herself with activities such as playing touch football with her grandson, playing fetch with her dog, getting tangled up in a dog leash and falling, or riding an all-terrain vehicle. Regardless, physical therapy notes after the surgeries showed the claimant to have some strength deficits, though when compliant with therapy had improved symptoms and abilities. At times she is noted to have tenderness to palpation and reduced ranges of motion, though at other times she is noted to have full range of motion of all joints. Additionally, at times she is noted to have some limited upper extremity strength, though has remained neurovascularly intact.

R. 22 (citations to record omitted).

In July 2017, Diane Manos, M.D., reviewed the record on behalf of the state agency. R. 77-79. According to Dr. Manos, the record documented diagnoses of degenerative disk disease of the lumbar spine, obesity, and left shoulder pain with limited range of motion of the left shoulder. R. 77. The doctor opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. R. 77. She could stand or walk, and could sit, for about 6 hours each in an 8-hour workday. *Id.* She could frequently climb ramps and stairs, could occasionally climb ladders, ropes, and scaffolds, could frequently stoop and crawl, and was unlimited in her ability to balance, kneel, and crouch. *Id.* She could only frequently reach overhead with her left upper extremity. R. 78. She should avoid concentrated exposure to hazardous machinery and unprotected heights. R. 79. In October 2017, Theresa March, D.O., also reviewed the record on behalf of the state agency and affirmed this assessment. R. 94-97.

The ALJ assigned "partial" weight to these opinions:

>The undersigned considered the opinion of the Bureau of Disability Determination medical consultants expressed in the Physical Residual Functional Capacity set forth in Exhibit 1A (*affirmed at 3A*). Although neither examining nor treating physicians, these experts are medical doctors with knowledge of the Social Security Administration's program and requirements. Their opinion is derived from and consistent with the medical evidence of record; however, evidence received at hearing level, including evidence of additional surgeries, support further limitation with the claimant's upper extremities. Therefore, the undersigned gives the Bureau of Disability Determination opinion partial weight.

R. 24 (citations to the record omitted).

V.　　**DISCUSSION**

　　A.　　**The ALJ's Evaluation of Dr. Ackner's Opinion**

Plaintiff first argues that the ALJ erred in evaluating Dr. Akner's opinion. This Court disagrees.

An ALJ must consider *all* medical opinions in evaluating a claimant's application. 20 C.F.R. § 416.927(c) (emphasis added). Under the controlling regulations[5] at the time Plaintiff filed her application, the opinion of a treating physician must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). If a treating physician's opinion is not accorded controlling weight, the ALJ must proffer "good reasons" for discounting the opinion of a treating physician. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Those reasons must also find substantial support in the record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Id*. However, a formulaic recitation of factors is not necessary. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion

---

[5] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, *inter alia*, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Because Plaintiff's application in this case was filed prior to that effective date of March 27, 2017, the treating physician rule applies to her claims.

permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

As is relevant here, when an ALJ does not assign controlling weight to the opinions of the claimant's treating providers, the ALJ must explain the weight assigned to the opinions of all medical sources. *See* 20 C.F.R. § 416.927(e)(2)(ii). In doing so, the ALJ is required to apply the following factors: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. . . ." *Rabbers*, 582 F.3d at 660 (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

In this case, the ALJ recognized the applicable regulation and law. R. 23-24. She also exhaustively summarized the evidence of record, including the evidence relating to Plaintiff's mental impairments, evaluations, and treatment. R. 18-19, 22-23. She recognized Dr. Ackner's status as a treating psychiatrist and the length and nature of her treatment relationship with Plaintiff, and she evaluated the doctor's opinion by reference to the medical evidence. R. 24. *See* 20 C.F.R. §§ 416.927(c)(1)-(6). The ALJ declined to accord controlling or deferential weight to Dr. Ackner's opinion "because it is not well-supported and is inconsistent with other substantial evidence in the record." R. 24. Plaintiff complains that this assessment is merely conclusory, but this Court disagrees: the ALJ pointed out that the checkbox answers given by Dr. Ackner on the form submitted by her provided no reference to the medical evidence supporting those answers. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (An ALJ may discount the opinion of a treating physician where the doctor fails to identify objective medical findings to support that opinion). It is true that Dr. Ackner offered her findings at Plaintiff's most recent

13

examination but, as the ALJ found, those findings were apparently "based upon a moment in time, as the majority of the mental health treatment records do not show that level of disability." R. 24. As this Court's summary of Plaintiff's mental health treatment records demonstrates, the finding of the ALJ in this regard is amply supported by the record. It is certainly true, as Plaintiff notes, that the record also contains evidence that would support an opposite conclusion. However, where, as here, the findings of the ALJ are supported by substantial evidence, this Court must defer to those findings, regardless of whether there is evidence in the record that could have supported an opposite finding. *See Longforth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff also complains that, in according "partial weight" to Dr. Ackner's opinion, the ALJ improperly failed to explain which portion(s) of her opinion the ALJ credited and which portion(s) she did not. However, a fair reading of the ALJ's decision—particularly the ALJ's RFC determination—makes clear that the ALJ rejected Dr. Ackner's opinion that Plaintiff's mental impairments would cause her to be absent from work more than three times per month, and to be distracted at work 2/3 of the time.

In short, the Court concludes that the ALJ did not err in her evaluation of the opinion of Plaintiff's treating psychiatrist, Dr. Ackner.

      B.      **The ALJ's RFC Determination**

Plaintiff also argues that the ALJ committed reversible error in crafting her RFC. Specifically, she contends that the limitation to a limited range of light work did not adequately take into account Plaintiff's history of shoulder injuries. Again, this Court disagrees.

A plaintiff's RFC is an administrative finding that represents the most that the claimant can do given the claimant's physical and mental impairments. *See* 20 C.F.R. § 416.927(d). It is

the job of the ALJ to determine the RFC by consulting the relevant medical evidence and other evidence of record. *See* 20 C.F.R. § 416.945(a)(3). However, the RFC determination, like all findings of an ALJ, must be supported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 312 Fed. App'x. 779 (6th Cir. 2009).

Here, substantial evidence supports the ALJ's RFC determination. In her brief, Plaintiff argues that the ALJ "cited no substantial evidence that [Plaintiff] can lift 20 pounds." *Plaintiff's Statement of Errors*, ECF No. 15, PageID# 2578. But as noted above, both state agency reviewing physicians opined that Plaintiff could lift 20 pounds occasionally and ten pounds frequently. Their opinions unquestionably constitute substantial evidence supporting the ALJ's findings. *See* 20 C.F.R. § 416.927(f)(2)(i) (An ALJ must consider findings of state agency medical and psychological consultants as opinion evidence). Thus, and although Plaintiff again cites to other evidence in the record to support her contention in this regard, this Court may not under these circumstances re-weigh the evidence on this issue. *See Emard*, 953 F.3d at 849; *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

## VI.  CONCLUSION

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 15 and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  October 18, 2022                               *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                       UNITED STATES MAGISTRATE JUDGE